J^HUGHES, J.
This is an appeal from a summary judgment awarding an out-of-state corporate taxpayer a refund of taxes paid in this state. For the reasons that follow, we affirm in part, reverse in part, and amend in part.
FACTS AND PROCEDURAL HISTORY
In response to an August 25, 1997 assessment issued by the Louisiana Department of Revenue (LDR) for payment of additional corporate franchise taxes for the periods ending March 31, 1994, March 31, 1995, and March 31, 1996, MCI Telecommunications Corporation (MCI) notified the LDR that it was protesting the assessment and would file suit for refund of any amounts paid. Submitted with the MCI letter was a check in the amount of $210,925.25 (the total of the amounts assessed for the three years) marked “PAID UNDER PROTEST.”
MCI filed suit on November 7, 1997, seeking a refund of the $210,925.25 paid under protest, and in addition sought a refund of amounts it claimed were “over-payments” of taxes paid for the three years at issue prior to the assessment of the additional taxes.[1] MCI claimed the overpayments were made because of a “legally incorrect allocation formula.” MCI asserted that because of the improper allocation formula, it had overpaid taxes for the tax years as follows: 1994 — $22,735.00; 1995 — $56,079.00; and 1996 — $91,356.00.
*676 During the ensuing litigation, the trial court granted two motions for summary judgment in favor of MCI. On October 3, 2001 the trial court signed a summary judgment in favor of MCI decreeing that the statutory and regulatory basis for determining MCI’s franchise tax liability for the years |31994, 1995, and 1996 was provided in LSA-R.S. 47:606(A)(l)(e) and LAC 61:I.306(A)(l)(e)(i). The judgment further decreed that to the extent the LDR’s assessment to MCI was predicated upon or employed any formula other than that provided in LSA-R.S. 47:606(A)(l)(e) and LAC 61:I.306(A)(l)(e)(i), that portion of the assessment was “abated” and MCI was entitled to a refund. The LDR’s cross motion for summary judgment was denied, and all other issues not disposed of by the judgment were reserved to the parties.
Subsequently, MCI filed a motion for summary judgment as to the amount of refund owed to it by the LDR. With the consent of counsel for the parties, the trial court appointed a “Special Master ... for the purpose of calculating the amount of refund owed to [MCI].” On January 7, 2004, summary judgment was signed by the trial court awarding MCI a refund of the $210,925.25 paid under protest, with interest from date of payment, and awarding a refund of overpayments made for the three tax years at issue in the following amounts: 1994 — $14,380.00; 1995— $31,457.00; and 1996 — $75,649.00, together with interest as provided by law.
The LDR filed a suspensive appeal on January 15, 2004 asserting the following assignments of error:
1. The trial court erred when it set aside the [LDR’s] audit findings that were based upon the agency’s application of LSA-R.S. 47:606(A)(l)(k) and LAC 61:I.306(A)(l)(k)(i).
2. The trial court erred in failing to find the [LDR’s] method of computing [MCI’s] Louisiana interstate sales revenue a reasonable methodology.
3. The trial court erred when it found that the provisions of LSA-R.S. 47:606(A)(l)(e) and LAC 61:I.306(A)(l)(e)(i)(a)-(b) should govern the computation of [MCI’s] Louisiana interstate sales revenue earned from its telecommunication services provided in the State of Louisiana without a finding that [¿the [LDR’s] application of LSA-R.S. 47:606(A)(l)(k) and LAC 61:I.306(A)(l)(k)(i) was unreasonable or arbitrary.
4. The trial court erred in granting [MCI’s] Motion for Summary Judgment.
5. The trial court erred in denying the [LDR’s] Cross Motion for Summary Judgment.
6. The trial court erred in issuing an order striking certain portions of affidavits submitted by the [LDR] in opposition to [MCI’s] Motion for Summary Judgment to Establish Amount of Refund Owed and in sustaining [MCI’s] Motion to Strike Defendant’s Exhibits and Affidavits.
7. The trial court erred in adopting the findings of the Special Master.
8. The trial court erred in granting [MCI’s] Motion for Summary Judgment to Establish Amount of Refund Owed.
9. The trial court erred in ordering the [LDR] to refund to [MCI] overpayment amounts not remitted under protest in accordance with LSA-R.S. 47:1576.
10. The trial court erred in taxing the costs of the Special Master to the [LDR].
11. The trial court erred in sustaining [MCI’s] objection to the [LDR’s] Mo *677 tion for Leave to submit Affidavit in Opposition to Motion for Summary Judgment (Barbara Reeves’[s] affidavit dated October 81, 2003).
12. The trial court erred in taxing all costs of these proceedings to the [LDR].
[Record references omitted.]
LAW AND ANALYSIS

Motions for Summary Judgment

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by LSA-C.C.P. art. 969; the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). Summary judgment shall be rendered in favor of the mover if the pleadings, ^depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Allen v. State ex rel. Ernest N. Morial—New Orleans Exhibition Hall Authority, 2002-1072, p. 5 (La.4/9/03), 842 So.2d 373, 377; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party’s favor. Hines v. Garrett, 2004-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765.
A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id. at 765-66.
The movant bears the burden to show there is no genuine issue of material fact. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. See Richard v. Hall, 2003-1488, pp. 4-5 (La.4/23/04), 874 So.2d 131, 137; Dyess v. American National Property and Casualty Company, 2003-1971, p. 4 (La.App. 1 Cir. 6/25/04), 886 So.2d 448, 451, writ denied, 2004-1858 (La.10/29/04), |6885 So.2d 592; Cressionnie v. Intrepid, Inc., 2003-1714, p. 3 (La.App. 1 Cir. 5/14/04), 879 So.2d 736, 738-39.

2001 Summary Judgment

In the October 3, 2001 summary judgment the trial court ruled that the law that should apply to determine the tax at issue was that suggested by MCI, LSA-R.S. 47:606(A)(l)(e)[2] and LAC *678 61:I.306(A)(l)(e),[3] rather than that suggested by the LDR, LSA-R.S. 47:606(A)(l)(k)[4] and LAC 61:I.306(A)(l)(k)(i).[5] Paragraph (e) of these laws provides a calculation method for “[r]evenues from services other than those described [in the |7preceding paragraphs of the law],” while Paragraph (k) allows the LDR Secretary to prescribe a reasonable calculation method for “[a]ll other revenues.” (Emphasis added.)
MCI contends that because its business entails providing a “service” to its customers the former provision(s) apply, while the LDR asserts that because the service MCI provides is not related to a physical presence in Louisiana as are the type services listed in LSA-R.S. 47:606(A)(1), paragraphs (a)-(d), MCI’s revenue is more appropriately classified as “other revenue.”[6] *679 Clearly, telecommunications services are “services” governed by the provisions of former LSA-R.S. 47:606(A)(l)(e) and LAC 61:I.306(A)(l)(e). The provisions of these laws relating to “other revenue” obviously apply to revenue generated by means not listed in the preceding paragraphs. Since MCI’s business is encompassed by the “services” provisions, the trial court was correct in ruling that those provisions should to be applied in the calculation of MCI’s franchise tax. Therefore, we find the October 2001 summary judgment was properly granted in favor of MCI and the LDR’s cross-motion for summary judgment was properly denied.
1 aRefundof Overpayments
The January 7, 2004 summary judgment awarded MCI a refund of over-payments it claims were made in conjunction with its 1994, 1995, and 1996 tax returns. MCI asserted that prior to the filing of these returns it had reached an agreement with the LDR on the computation method to be applied and that after these returns were filed, the LDR assumed the position that the “other revenue” provisions could be used by the Secretary. MCI contends that based on this reasoning the LDR adopted the “Georgia” method of calculating its tax liability and then issued the supplemental tax assessment of $210,925.25 for the years of 1994, 1995, and 1996. Upon receipt of this assessment MCI recalculated its tax liability for these years based on its position that the “other services” provisions provided the appropriate calculation formula and determined that it did not owe either the $210,925.25 supplemental assessment of taxes or overpayments amounting to $22,735.00, $56,079.00, and $91,356.00 previously remitted for 1994, 1995, and 1996, respectively. On rendition of summary judgment the trial court agreed with MCI, finding overpayments of $14,380.00, $31,457.00, and $75,649.00 were made by MCI for these years; judgment was rendered refunding these amounts.
Louisiana Constitution Article 7, § 1 vests the power of taxation in the legislature, and Louisiana Constitution Article 7, § 3 mandates the legislature to “provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer.” Clark v. State, 2002-1936, p. 5 (LaApp. 1 Cir. 1/28/04), 873 So.2d 32, 35, writ denied, 2004-0452 (La.4/23/04), 870 So.2d 300. To fulfill its latter obligation, the legislature has provided three remedies: (1) the Claims Against the State procedure, LSA-R.S. 47:1481, et seq.; (2) the Payment Under Protest procedure, LSA-R.S. 1947:1576, et seq., and (3) the Overpayment Refund procedure, LSA-R.S. 47:1621, et seq. Id.
In this case MCI sought recovery of an amount paid over the amount of taxes allegedly due, a claim which falls within the definition of “overpayment” found in LSA-R.S. 47:1621:
A. For the purpose of this Chapter,’ “overpayment” means a payment of tax, penalty, or interest when none was due; *680 the excess of the amount of tax, penalty, or interest paid over the amount due; or the payment of a penalty that is later waived or remitted by the secretary, provided that the power of the secretary to refund overpayments shall be as prescribed and limited in this Section.
B. The secretary shall make a refund of each overpayment where it is determined that:
(1) The tax was overpaid because of an error on the part of the taxpayer in mathematical computation on the face of the return or on any of the supporting documents.
(2) The tax was overpaid because of a construction of the law on the part of the taxpayer contrary to the secretary’s construction of the law at the time of payment.
(8) The overpayment was the result of an error, omission, or a mistake of fact of consequence to the determination of the tax liability, whether on the part of the taxpayer or the secretary.
(4) The overpayment resulted from a change made by the secretary in an assessment, notice, or billing issued under the provisions of Chapter 18 of Subtitle II of this Title.
(5) With regard to a Louisiana income tax overpayment, the overpayment resulted from a change in federal income tax data which formed the basis for calculation of the Louisiana income tax.
(6) With regard to any Louisiana tax overpayment, the overpayment resulted from an overpayment of estimated Louisiana tax.
(7) With regard to a Louisiana income tax overpayment, the overpayment resulted from application of a Louisiana net operating loss carryback or carryover.
(8) The overpayment resulted from a subsequent determination that the taxpayer was entitled to pay a tax at a reduced tax rate.
(9) The overpayment was the result of a payment that exceeded either the amount shown on the face of the return or voucher, or which would have been shown on the face of the return or voucher if a return or voucher were required.
* * *
| lnF. This Section shall not be construed to authorize any refund of tax overpaid through a mistake of law arising from the misinterpretation by the secretary of the provisions of any law or of the rules and regulations promulgated thereunder. In the event a taxpayer believes that the secretary has misinterpreted the law or promulgated rules and regulations contrary therewith, his remedy is by payment under protest and suit to recover, or by appeal to the board of tax appeals in instances where such appeals lie. [Emphasis added.]
A taxpayer aggrieved by an assessment made by the LDR has two remedies available to challenge the assessment: the taxpayer may appeal the assessment to the Board of Tax Appeals in accordance with LSA-R.S. 47:1565; or a taxpayer may pay the disputed tax under protest and file a lawsuit to recover the tax under LSA-R.S. 47:1576. If the taxpayer fails to appeal the assessment to the Board of Tax Appeals or make payment under protest, the taxpayer has no right of action to- challenge the assessment and the trial court lacks subject matter jurisdiction to review the Department’s assessment. L.D. Brinkman & Co. (Texas) v. Kennedy, Inc., 99-0862, p. 4 (La.App. 1 Cir. 5/12/00), 762 So.2d 150, 152-53. See also Sperry Rand Corp. v. Collector of Revenue, 376 So.2d 505, 507 *681 (La.App. 1 Cir.), writ denied, 376 So.2d 156 (La.1979). Since the record does not reflect that MCI followed either of these procedures in this case with respect to the “overpayments,” the trial court erred in rendering judgment in favor of MCI on these claims and that portion of the judgment should be reversed. The LDR’s cross-motion for summary judgment should have been granted dismissing this portion of MCI’s suit.

Amount Paid Under Protest

The parties do not dispute that the $210,925.25 paid by MCI under protest was in response to the LDR’s assessment based on its calculation of tax due under LSA-R.S. 47:606(A)(l)(k) and LAC 61:I.306(A)(l)(k)(i), rather than LSA-R.S. 47:606(A)(1)(e) and LAC 61:I.306(A)(l)(e). Having | ^determined hereinabove that the LDR erred in its methodology by applying an inappropriate provision of law, we must conclude that the LDR’s supplemental assessment of $210,925.25 to MCI was erroneous. Therefore, we affirm that portion of the trial court’s summary judgment awarding MCI a refund of this amount. Costs
On appeal the LDR contends the trial court erred in taxing it with the costs of the special master as well as all other costs of the proceeding.[7] Under LSA-C.C.P. art.1920, the trial judge has great discretion in awarding costs. Simpson v. Goodman, 97-2675, p. 13 (La.App. 1 Cir. 12/28/98), 727 So.2d 555, 563. An appellate court will not disturb the trial court’s fixing of costs absent an abuse of the sound discretion afforded the trial court. Id.
In light of the disposition of this appeal reversing a substantial portion of the award to MCI, we find that an equitable distribution of the costs is appropriate. Accordingly, the trial court’s judgment is amended to apportion one-half of all costs, including the special master’s fee, to each party.

Remaining Assignments of Error Preter-mitted

Having disposed of the issues presented in this appeal on these bases, we find it unnecessary to address the remaining arguments of the parties.
CONCLUSION
For the reasons assigned herein, the October 3, 2001 summary judgment is affirmed; the January 7, 2004 summary judgment is reversed in part insofar as it awarded MCI the sums of $14,380.00, $31,457.00, and _Jjg$75,649.00. Summary judgment is hereby rendered in favor of the LDR dismissing MCI’s claim for refund of these “overpayments.” Further, that portion of the January 2004 judgment taxing to the LDR all costs of the trial court proceeding, including the special master fee of $7,500.00, is amended to assess one-half of all trial court costs to each party. In all other respects the January 2004 summary judgment in favor of MCI is affirmed. All costs of this appeal are assessed equally between the parties.
AFFIRMED IN PART; REVERSED IN PART; AMENDED; AND RENDERED.

. J. Tracy Mitchell intervened in the proceeding as a former outside counsel for the LDR asserting a claim for his attorney's fee.

. The text of LSA-R.S. 47:606(A)(l)(e) as it appeared prior to its 2002 amendment was as follows: "Revenues from services other than those described above shall be attributed within and without Louisiana on the basis of the location at which the services are rendered." (Emphasis added. This provision is currently contained in paragraph (f) of the statute.) Because the telecommunications services typically provided by MCI to its Louisiana customers are "rendered” by employees located in another state, application of this provision to the determination of MCI’s franchise tax results in a lower tax for MCI.

. The text of LAC 61:I.306(A)(1)(e) reads as follows:
Revenue from Services Other Than from Transportation
i. Revenue derived from services other than from transportation shall be attributed to the state in which the services are rendered. In the case of services in which property is not a material revenue-producing factor, the services shall be presumed to have been performed in the state in which the personnel engaged in rendering the services are located. In the case of services in which personnel and property are material revenue-producing factors, such revenue shall be attributed within and without this state on the basis of the arithmetical average of the following two ratios:
(a), the ratio that salaries and wages paid to personnel performing such services within Louisiana bear to total salaries and wages for personnel performing such services both within and without Louisiana; and
(b). the ratio that the value of property used in Louisiana in performing the services (whether owned by the taxpayer or not) bears to the total value of all property used in performing the services both within and without Louisiana.
ii. In any case in which it can be shown that charges for services constitute a pure recovery of the cost of performing the services and do not include a reasonable rate of profit, amounts received in reimbursement of such costs shall not be construed to be revenues received and shall be omitted from both the numerator and denominator of the attribution ratio.

. The text of LSA-R.S. 47:606(A)(l)(k) as it appeared prior to its 2002 amendment was as follows: "All other revenues shall be attributed within and without this state on the basis of such ratio or ratios, prescribed by the collector, as may be reasonably applicable to the type of revenues and, business involved.” (Emphasis added. This provision is currently contained in paragraph (l) of the statute.) Because the LDR Secretary has the discretion to develop a reasonable formula .under this paragraph, the LDR elected to make this calculation based on the formula applied by the State of Georgia to MCI’s taxes in that state, which produced a much higher Louisiana tax for MCI and resulted in the supplemental assessments at issue herein.

. The text of LAC 61:I.306(A)(l)(k)(i) provides:
All Other Revenues
i. All revenues which are not specifically described in § 306.A.l.a-j shall be attributed within and without Louisiana on the basis of such ratio or ratios as may be reasonably applicable to the type of revenue and business involved.

. Paragraphs (a)-(d) of LSA-R.S. 47:606(A)(1) address the following: (a) goods, merchandise, or property delivered in this state via a common transportation carrier; (b) air transportation; (c) pipeline transportation of oil and gas products; and (d) transportation other than by aircraft or pipeline. The 2002 amendment of the statute inserted a new paragraph (e) addressing revenue from broadcasting film or radio programming. The transmissions covered in new paragraph (e) include "public airwaves, by cable, direct or indirect satellite transmission, or any other means of communication, either through a network, including owned and affiliated stations, or through an affiliated, unaffiliated, or independent television or radio broadcasting station.” The LDR’s argument respecting MCI is that because it leases the use of facilities from other telecommunications compa *679 nies to provide services that it sells to its customers, its business is unlike the businesses addressed by Paragraphs (a)-(d) that presumably use their own physical assets within the state to generate income. However, this argument is unconvincing because such a distinction is not expressed by the plain words of the statute, which are not ambiguous in directing its application to revenues arising from “services other than those described [in (a)-(d) ].” Further, the text of the 2002 broadcasting film or radio programming paragraph expressly includes revenue generated by that medium whether the broadcasting stations are owned, affiliated, unaffiliated, or independent. Likewise we conclude that the physical presence of a revenue-generating asset is not determinative of inclusion within the scope of former Paragraph (e) of LSA-R.S. 47:606(A)(1).

. A special master’s compensation is fixed by the trial court in a "reasonable” amount and taxed as costs of court pursuant to LSA-R.S. 13:4165. The trial court fixed the fee of the special master in this case at $7,500.00 and taxed the fees as costs against the LDR.