*857
 
 PETTIGREW, J.
 

 |;iIn the instant case, appellants challenge the trial court’s judgment granting injunctive relief in favor of plaintiffs. Following this court’s review of the record and relevant law, we affirm in part and reverse in part.
 

 FACTS AND PROCEDURAL HISTORY
 

 On March 24, 2005, August J. Rantz, III, a certified registered nurse anesthetist (“CRNA”), submitted a petition for an advisory opinion to the Louisiana State Board of Nursing (“the LSBN”), which requested a response to the following query:
 

 Whether it is within the scope of practice for a CRNA to perform procedures involving the injection of local anesthetics, steroids and analgesics for pain management purposes, including, but not limited to, peripheral nerve blocks, epidural injections (62310), and spinal facet joint injections (64470 & 64472) when the CRNA can document education, training and experience in performing such procedures.
 

 After considering Rantz’s petition, the LSBN’s practice committee submitted a recommendation to the LSBN that it was within the scope of practice for CRNAs to perform such procedures under the direction and supervision of a physician.
 

 Prior to the LSBN’s consideration of the practice committee’s recommendation, Spine Diagnostics Center of Baton Rouge, Inc. (“Spine Diagnostics”) filed a “Petition For Injunctive Relief And For Declaratory Judgment,” seeking to enjoin the LSBN from adopting the committee’s recommendation, to prevent Rantz from practicing interventional pain management, and to prevent Rantz from performing anesthesia-related management unless by physician order and under the direct and immediate supervision of a physician. Additionally, Spine Diagnostics prayed that the trial court issue a declaratory judgment finding that the practice of “pain management” constitutes the “practice of medicine.”
 
 [1]
 
 At its December 7, 2005 board meeting, the LSBN amended the recommendation of the practice committee, and adopted the following statement:
 

 That it is within the scope of practice for the CRNA to perform procedures under the direction and supervision of the physician involving the injection |4of local anesthetics, steroids and analgesics for pain management purposes, peripheral nerve blocks, epidural injections, and spinal facet joint injections when the CRNA can document education, training and experience in performing such procedures and has the knowledge, skills, and abilities to safely perform the procedures based on an order from the physician.
 

 The statement was subsequently published on the LSBN’s web site as well as in its quarterly publication,
 
 The Examiner.
 

 Following the LSBN’s adoption of the above statement, Spine Diagnostics filed a first supplemental and amending petition, contending the LSBN was attempting to promulgate a “rule” within the meaning of the Louisiana Administrative Procedure Act (“LAPA”) that “has not been properly adopted and promulgated and should be declared invalid.”
 
 [2]
 
 Thereafter, at Spine
 
 *858
 
 Diagnostics’ request, the Louisiana State Board of Medical Examiners (“the LSBME”) issued an Advisory Opinion regarding interventional pain management by CRNAs. In its opinion, the LSBME indicated that CRNAs could provide anesthetics for acute pain associated with surgery, but opined that the procedures at issue for interventional pain management purposes constituted the practice of medicine that could only be performed by a physician.
 
 [3]
 

 After a two-day hearing on Spine Diagnostics’ request for injunctive relief, the trial court took the matter under advisement. The court subsequently rendered judgment denying the request for injunc-tive relief, but noted that the request for declaratory judgment would proceed via ordinaria in accordance with the case management order. Thereafter, Spine Diagnostics filed a writ application with this court seeking review of that judgment. We granted certiorari for the limited purpose of reviewing the judgment denying Spine Diagnostics’ request for injunctive relief, insofar | Sas that request alleged the LSBN had promulgated a “rule” within the intendment of the LAPA without following the procedural requirements therein.
 

 In an unpublished decision rendered on December 28, 2006, this court reversed the trial court’s judgment and issued a preliminary injunction in favor of Spine Diagnostics.
 
 Spine Diagnostics Center of Baton Rouge, Inc. v. Louisiana State Bd. of Nursing ex rel. Louisiana Dept. of Health and Hospitals,
 
 2006-0554 (La.App. 1 Cir. 12/28/06) (unpublished opinion),
 
 writs denied,
 
 2007-0183, 2007-0217 (La.3/16/07), 952 So.2d 702, 703
 
 (“Spine Diagnostics I”).
 
 In so doing, we noted, in pertinent part, as follows:
 

 Thus, Spine Diagnostics has made a
 
 pil-ma facie
 
 showing that the LSBN statement substantively expands the scope of practice for CRNAs into an area where they have not traditionally practiced, i.e., chronic or interventional pain management. Such a substantive expansion of the scope of practice clearly constitutes a rule within the meaning of La. R.S. 49:951(6). Further, although the LSBN contends the statement is limited in scope, the actual language of the statement approved by the LSBN does not limit its application to Rantz alone, and is capable of being applied to every CRNA who has the requisite knowledge, skills, and abilities to perform the procedures at issue. CRNAs are able to freely access the statement insofar as it was published in
 
 The Examiner
 
 and on the LSBN’s website.
 

 Given these circumstances, we find Spine Diagnostics has made a
 
 prima facie
 
 showing that the statement adopted by the LSBN insofar as it relates to chronic or interventional pain management is a rule within the meaning of the LAPA. Since it is undisputed that the requirements of the LAPA were not met, Spine Diagnostics is entitled to a preliminary injunction enjoining enforcement of the statement adopted by the LSBN at its December 7, 2005, board meeting, and enjoining Rantz from practicing chronic or interventional
 
 *859
 
 pain management procedures pursuant to the authority of that statement.
 

 On June 29, 2007, Spine Diagnostics filed a second supplemental and amending petition, adding Raymond R. Smith, Jr., a CRNA who had admitted to performing interventional pain management procedures in violation of the Medical Practice Act, the Nurse Practice Act, and other general and equitable laws.
 
 [4]
 
 Spine Diagnostics also alleged that the LSBN attempted to circumvent this court’s December 28, 2006 ruling by | «urging House Bill 684 and Senate Bill 322.
 
 [5]
 
 On July 9, 2007, the Louisiana Association of Nurse Anesthetists (“LANA”) sought to intervene in this matter as of right. On October 15, 2007, LANA was permitted to intervene in the proceedings.
 

 The trial on Spine Diagnostics’ request for declaratory judgment, permanent injunction, and contempt was held on November 29 and BO, 2007, and December 3, 2007. Thereafter, the trial court took the matter under advisement and, on January 10, 2008, rendered judgment in favor of Spine Diagnostics as follows:
 
 [6]
 

 The Court ORDERS, ADJUDGES and DECREES, the following in connection with the declaratory judgment:
 

 1.The statement issued by the LSBN substantively expands the scope of practice for CRNAs into an area where they have not traditionally practiced, i.e. chronic or interventional pain management.
 

 2. The practice of interventional pain management is not within a CRNAs scope of practice.
 

 3. The practice of interventional pain management is solely the practice of medicine.
 

 4. The opinion issued by the LSBN is an effort to substantively expand CRNA scope of practice and is an improper attempt at rule making.
 

 IT IS FURTHER ORDERED, ADJUDGED and DECREED that in connection with the permanent injunction:
 

 1. A permanent injunction issue prohibiting the LSBN from enforcing the statement.
 

 2. A permanent injunction issue prohibiting August Rantz, III from performing chronic interventional pain procedures in connection with the LSBN statement.
 

 3. The LSBN shall remove the advisory opinion from its website.
 

 4. The LSBN shall post the judgment of this Court on its website and publish it in the LSBN publication,
 
 The Examiner.
 

 IT IS FURTHER ORDERED, ADJUDGED and DECREED that
 

 1. LSBN is taxed with all costs associated with these proceedings;
 

 
 *860
 
 2. LSBN is taxed with all expert costs and fees;
 

 3. LSBN is taxed $7,500.00 in litigation costs pursuant to LA R.S. 49:965.1(A);
 

 4. LSBN is taxed with costs of all deposition transcripts.
 

 |7It is from this judgment that the LSBN and LANA have appealed.
 
 [7]
 

 In its appeal, the LSBN assigns the following specification of errors:
 

 1. The Trial Court erred in ruling that Spine Diagnostics met its burden of proof to obtain a permanent injunction enjoining the Nursing Board’s Advisory Opinion on the basis that it constituted a “rule” which should have been promulgated in accordance with the LAPA.
 

 2. The Trial Court erred in ruling that Spine Diagnostics had met its burden of proof to obtain a permanent injunction enjoining the Nursing-Board’s Advisory Opinion on the basis that it substantively expands the scope of practice for CRNAs into an area where CRNAs have not traditionally practiced, i.e., chronic or in-terventional pain management.
 

 3. The Trial Court erred in ruling that Spine Diagnostics had met its burden of proof to obtain a mandatory injunction requiring the removal of the Advisory Opinion from its website and ordering publication of the judgment on the Nursing Board’s website and in its quarterly publication,
 
 The Examiner.
 

 4. The Trial Court erred in declaring the practice of injecting local anesthetics, steroids and analgesics for chronic pain management under the direction and supervision of a physician to be beyond the traditional scope of practice for CRNAs.
 

 5. The Trial Court erred in declaring the practice of injecting local anesthetics, steroids and analgesics for chronic pain management under the direction and supervision of a physician to be solely the practice of medicine.
 

 6. The Trial Court erred in awarding Spine Diagnostics up to $7,500 in reasonable litigation expenses pursuant to La. R.S. 49:965.1 and other fees/costs for its expert witnesses and the taking of depositions.
 

 Similarly, LANA sets forth the following on appeal for our review:
 

 1. The trial court committed legal error in declaring the practice of injecting local anesthetics, steroids and analgesics for chronic pain management pursuant to a physician’s order beyond the scope of CRNA practice.
 

 2. The trial court committed legal error in declaring the practice of injecting local anesthetics, steroids and analgesics for chronic pain management pursuant to a physician’s order to be solely the practice of medicine.
 

 3. The trial court erred in finding the Nursing Board’s advisory opinion is an improper attempt at rule-making.
 

 |¾4. The trial court erred in finding that the Nursing Board advisory opinion sub
 
 *861
 
 stantively expands the scope of practice for CRNAs into an area where CRNAs have not traditionally practiced, i.e. chronic or interventional pain management.
 

 LAW OF THE CASE DOCTRINE
 

 On appeal, the LSBN and LAIMA both argue that the advisory opinion issued by the LSBN in response to Rantz’s petition was nothing more than a declaratory order, which is provided for in La. R.S. 49:962, not a rule within the meaning of the LAPA.
 
 [8]
 
 Thus, they assert, the trial court erred in finding that the LSBN’s advisory opinion was an improper attempt at rule-making. In response, Spine Diagnostics contends that the LSBN and LANA are attempting to relitigate issues previously decided by this court. Spine Diagnostics maintains that these arguments are pretermitted by the law of the case doctrine as they have been briefed, argued, and decided by this court.
 

 Pursuant to the law of the case doctrine, an appellate court generally will not, as part of a subsequent appeal, reconsider its earlier ruling in the same case.
 
 Sprnell v. Dudley,
 
 2006-0015, p. 4 (La. App. 1 Cir. 12/28/06), 951 So.2d 339, 342,
 
 writ denied,
 
 2007-0196 (La.3/23/07), 951 So.2d 1106.
 

 In
 
 Louisiana Land and Exploration Company v. Verdin,
 
 95-2579, pp. 3-4 (La. App. 1 Cir. 9/27/96), 681 So.2d 63, 65,
 
 writ denied,
 
 96-2629 (La.12/13/96), 692 So.2d 1067,
 
 cert. denied,
 
 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997), this court discussed the law of the case doctrine and its application as follows:
 

 The law of the case principle is a discretionary guide which relates to (a) the binding force of a trial judge’s ruling during the later stages of trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. It applies to all prior rulings or decisions of an appellate court or the supreme court in the same case, not merely those arising from the full appeal process. Re-argument in the same case of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling. However, the law of the case principle is not applied in cases of palpable 19error or where, if the law of the case were applied, manifest injustice would occur.
 

 The reasons for the law of the case doctrine is to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue.
 

 When an appellate court considers arguments made in supervisory writ applications or responses to such applications, the court’s disposition on the issue considered usually becomes the law of the case, foreclosing relitigation of that issue either at the trial court on remand or in the appellate court on a later appeal. However, where a prior disposition is clearly erroneous and will create a grave injustice, it should be reconsidered. [Citations omitted.]
 

 
 *862
 
 In considering this doctrine and its applicability herein, we note that the arguments and issues raised by the LSBN and LANA in this regard appear to be indistinguishable from those presented to the trial court in the original request for injunctive relief and again to this court in the writ application in
 
 Spine Diagnostics I.
 
 In fact, a review of our opinion in
 
 Spine Diagnostics I
 
 reveals this court previously considered the ISBN’s authority to issue declaratory orders and advisory opinions pursuant to La. R.S. 49:962, thoroughly reviewed arguments concerning La. R.S. 37:930 as it relates to this issue, and concluded that the LSBN’s statement, insofar as it relates to chronic or interventional pain management, was a rule that required compliance with the procedural requirements of the LAPA. Although ably argued on appeal, a review of the instant record reveals that this court’s previous ruling was without error. Thus, by operation of the law of the case doctrine, we decline review of these issues on appeal.
 

 SCOPE OF PRACTICE ISSUE
 

 The central issue to be decided in this appeal is whether procedures involving the injection of local anesthetics, steroids and analgesics for pain management purposes, peripheral nerve blocks, epidural injections, and spinal facet joint injections are within the scope of practice of CRNAs or whether these procedures are considered the practice of medicine and can only be performed by a physician licensed to practice medicine in Louisiana. The issue before us is res nova.
 

 ImThe statutory provisions governing practice by a CRNA are found in La. R.S. 37:390. Louisiana Revised Statutes 37:930(A) provides that CRNAs are authorized to administer local anesthetics under the direction and supervision of a physician.
 
 [9]
 
 In 2004, the Louisiana Legislature statutorily recognized the importance of CRNAs in providing anesthetics to Louisiana residents when it added paragraph (G) to La. R.S. 37:930. This provision provides, in pertinent part, as follows:
 

 G. (1) The Louisiana Legislature hereby finds that:
 

 (a) Certified Registered Nurse Anesthetists (CRNAs) have been selecting and administering anesthesia in Louisiana and the United States for over one hundred years.
 

 [[Image here]]
 

 (e) Nurse anesthetists receive rigorous clinical and academic training, requiring a bachelor’s degree from an accredited school of nursing and one year of professional nursing experience in an acute care setting prior to being considered for entrance to an accredited twen
 
 *863
 
 ty-four to thirty-six month nurse anesthesia educational program.
 

 (f) CRNAs administer the majority of anesthetics in Louisiana and all of the anesthetics in many parts of the state.
 

 (g) Multiple studies have demonstrated that CRNAs are safe, accessible, and cost-effective providers of anesthetics.
 

 (h) CRNAs are critical providers of quality anesthesia services in the health care delivery system in this state.
 

 (i) An adequate supply of CRNAs in Louisiana is vital to continued access to safe, cost-effective health care for the citizens of Louisiana.
 

 [[Image here]]
 

 In(n) CRNAs are trained and legally authorized to administer all types of anesthetics in all settings while AAs [Anesthesiologist assistants] are limited by the type of anesthetics they can administer and the settings in which they are authorized to perform their services.
 

 On appeal, the LSBN and LANA argue that Spine Diagnostics failed to prove by a preponderance of the evidence that the LSBN’s statement expands the scope of practice for CRNAs into areas where CRNAs have not traditionally practiced. Noting an overlap between various practitioners, including nurses, and the practice of medicine, the LSBN and LANA contend that interventional pain management is not solely the practice of medicine. Moreover, they maintain that had the legislature intended to exclude CRNAs from performing interventional pain management procedures, language concerning the restriction could have simply been added to La. R.S. 37:930 to accomplish same.
 

 To the contrary, Spine Diagnostics asserts that the evidence presented at the trial on the merits supports the trial court’s ruling that the LSBN’s statement expands the scope of practice for CRNAs into an area not traditionally practiced. Spine Diagnostics argues that (1) CRNAs do not have an established history of performing interventional pain management procedures; (2) CRNAs do not have the education, training, or accreditation to safely and effectively perform these procedures; (3) studies demonstrate decreased safety, competency, and efficacy when these procedures are performed by CRNAs; (4) CRNAs have no regulatory mechanism or process to assess their competency, training, or education; (5) no verifiable need exists for CRNAs in this area of practice; and (6) CRNA practice in this area will negatively impact public health and safety.
 

 As previously mentioned, this matter was tried over three days before the trial court. After hearing from the witnesses and considering the documentary evidence presented by the parties, the trial court entered a declaratory judgment finding that the statement issued by the LSBN expanded the scope of practice for CRNAs into an area where they have not traditionally practiced, i.e., chronic or 112interventional pain management. The trial court further declared that the practice of chronic or interventional pain management is not within the scope of practice of a CRNA, but rather is solely the practice of medicine.
 

 Appellate courts review a trial court’s decision to grant or deny a declaratory judgment using the abuse of discretion standard.
 
 Mai v. Floyd,
 
 2005-2301, p. 4 (La.App. 1 Cir. 12/6/06), 951 So.2d 244, 245. Factual findings made by the trial court are reviewed using the manifest error or clearly wrong standard.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989).
 

 The trial court also issued a permanent injunction prohibiting the LSBN from enforcing its statement and prohibiting Mr. Rantz from performing chronic interven-
 
 *864
 
 tional pain procedures in connection with the LSBN statement and a mandatory injunction ordering the LSBN to remove the statement from its website, post the judgment of the trial court on its website, and publish the judgment in its publication,
 
 The Examiner.
 

 The issuance of a permanent injunction takes place only after a trial on the merits, in which the burden of proof must be founded on a preponderance of the evidence.
 
 State Machinery & Equipment Sales, Inc. v. Iberville Parish Council,
 
 2005-2240, p. 4 (La.App. 1 Cir. 12/28/06), 952 So.2d 77, 81. A mandatory injunction, so named because it commands the doing of some action, similarly cannot be issued without a hearing on the merits. The jurisprudence has established that a mandatory preliminary injunction has the same basic effect as a permanent injunction, and therefore may not be issued on merely a prima facie showing that the party seeking the injunction can prove the necessary elements; instead, the party must show by a preponderance of the evidence at an evidentiary hearing that he is entitled to the preliminary injunction.
 
 Concerned, Citizens for Proper Planning, LLC v. Parish of Tangipahoa,
 
 2004-0270, p. 7 (La.App. 1 Cir. 3/24/05), 906 So.2d 660, 664. The standard of review for the issuance of a permanent injunction is the manifest error standard.
 
 Cathcart v. Magruder,
 
 2006-0986, p. 18 (La.App. 1 Cir. 5/4/07), 960 So.2d 1032,1041. Under this standard, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one.
 
 Stobart v. State through Dept. of Transp. and Development,
 
 617 So.2d 880, 882 (La.1993). Thus, if the trial court’s findings are reasonable in light of the record reviewed in its entirety, this court may not reverse, even if convinced that had it been sitting as trier of fact, it would have weighed the evidence differently.
 
 Parish of East Feliciana ex rel. East Feliciana Parish Police Jury v. Guidry,
 
 2004-1197, p. 15 (La.App. 1 Cir. 8/10/05), 923 So.2d 45, 53,
 
 writ denied,
 
 2005-2288 (La.3/10/06), 925 So.2d 515.
 

 The trial court heard from many medical experts regarding the scope of practice issue. Dr. Laxmaiah Manchikanti, the single most published author in the United States on interventional pain management techniques, was accepted by the court as an expert in interventional pain management with special expertise in credentialing, education, training, research, access, and scope of practice. Dr. Manchikanti developed the definition of interventional pain management that is accepted by the United States Congress today. He testified at length concerning the level of training needed to perform interventional pain management procedures, indicating that the health and safety of the patients warrants the enhanced skills of a duly licensed and trained medical physician. Dr. Man-chikanti opined that interventional pain management procedures are not traditionally within the scope of practice for a CRNA.
 

 Dr. John Dombroski testified as an expert in the field of anesthesiology, internal medicine, and pain medicine, and was allowed to express an opinion with respect to the scope and practice of medicine in those areas of medicine as they interface with other healthcare professionals such as CRNAs. Dr. Dombroski stated unequivocally that CRNAs should not be allowed to be performing interventional pain management procedures as they have never had the proper training required to do so. He indicated that the patients deserve the best care possible, including a proper medical diagnosis and the correct assessment
 
 *865
 
 by a duly licensed and trained medical physician.
 

 The trial court also was provided testimony from Dr. Gabor Racz via deposition. Dr. Racz is an anesthesiologist who is currently working as a professor. He has taught both physicians and CRNAs. Dr. Racz is a highly decorated physician, having been listed in the “Best Doctors in America” and receiving the lifetime achievement award |1<tfrom the American Society of Interventional Pain Physicians. He is also the President of the World Institute of Pain. Dr. Racz testified that under no circumstances should a CRNA be allowed to perform interventional pain management procedures. He added that if CRNAs wish to do these procedures, they have every right to “avail themselves to the training, and whatever it takes to be an interventional pain physician.” Dr. Racz opined that nurses do not practice to a physician level and that a medical diagnosis differs from a nursing diagnosis.
 

 Dr. Frank Falco was accepted as an expert in the field of physical medicine. He is also board certified in rehabilitation, pain medicine, and sports medicine. Dr. Falco testified regarding the requirements of a pain medicine fellowship training program. He explained that the assessment of a chronic pain patient is very complex and is not “simply putting a needle in someplace and injecting some solution in that area.” Dr. Falco noted further:
 

 The pain fellow must understand based on a history tailored towards the pain patient and the physical examination, that is, a complete examination involving the neurological assessment, a musculo-skeletal assessment, a psychological assessment, reviewing of all of the diagnostic data, the CT, the xray, the MRI, the electrodiagnostic studies, and then making a diagnosis based upon the evaluation and then laying out a treatment plan. We have three fellows in our ACGME Accredited Pain Medicine Fellowship. They are constantly supervised for the entire twelve months. They get four months of inpatient training.
 

 When asked if CRNAs had any role to play in the chronic pain management arena, Dr. Falco responded that although CRNAs are excellently trained in providing anesthesia services for surgery under the direction of an anesthesiologist, “[t]hey do not have the training that allows them to include in their scope of practice the management of chronic complex pain.” Dr. Falco opined that it would be “practicing medicine with a license, without the proper training,” which could lead to significant complications not only from the procedures themselves, but also from the patients being mismanaged. Dr. Falco concluded that without going to medical school, CRNAs cannot receive the training needed to be able to competently perform these procedures.
 

 Jack Neary, a CRNA from New Hampshire, testified that he performs interven-tional pain management procedures unsupervised. He acknowledged that he 1 lfihas no training in radiology or neurology. Mr. Neary noted further that he knows of no regulations or guidelines of any sort that apply nationally to institutions to assess the competency, ability, credentials or skill sets of CRNAs with respect to interven-tional pain management procedures. From his perspective, once a CRNA gets their certificate and the proper training, and feels comfortable with a procedure, they can do it. With regard to the scope of practice for CRNAs in New Hampshire, Mr. Neary testified that the New Hampshire Board of Nursing has found that certain interventional pain management procedures are within the scope of practice of a CRNA licensed in New Hampshire.
 

 
 *866
 
 Christine Langer testified regarding the educational requirements of a CRNA. Ms. Langer is an instructor who trains CRNAs at the Louisiana State University School of Nursing. She indicated she does not teach a section called “interventional pain management,” noting that the majority of her teaching focuses on training CRNAs for the hospital setting. Ms. Langer agreed that there is a distinct difference between acute pain treatment in a hospital or surgical setting and chronic interventional pain management. She also acknowledged that at the time a student acquires a CRNA certificate, absent anything else, no student in Louisiana is competent to perform interventional pain management procedures. Ms. Langer testified that she is not aware of any post-certification competency benchmarks for CRNAs related to interventional pain management procedures. She agreed that CRNAs cannot make medical diagnoses.
 

 Barbara Morvant, the Executive Director for the LSBN, testified concerning the licensing and credentialing of CRNAs in Louisiana. She explained that in its role as a licensing agency, the LSBN credentials CRNAs for entry level practice, and provides for re-certification requirements in their field of nurse anesthesia practice. The LSBN also investigates any complaints that may be filed against CRNAs. When asked specifically about the LSBN statement in question and whether the LSBN had any mechanism or system designed to verify or in any way assess whether a CRNA has the documented education, training, experience, knowledge, skills, and abilities to safely perform 11(iinterventional pain management procedures, Ms. Morvant acknowledged that it has no such system in place.
 

 Jackie Rowles is the President-Elect of the American Association of Nurse Anesthetists and is a practicing CRNA in Indiana. She has been performing inter-ventional pain management procedures for almost five years. Ms. Rowles agreed that she cannot make a medical diagnosis, only a nursing diagnosis. She explained, however, that when her patients come to her for treatment, they have already been seen by a physician and have a diagnosis. Ms. Rowles acknowledged that there are no guidelines for assessing the competency, skill set, abilities, or training needed for CRNAs to begin performing interventional pain management procedures. Rather, she opined that a CRNA should be allowed to perform these procedures once the CRNA has had the “necessary education, training, and feels like they have the necessary skills.”
 

 Kathleen Wren, a CRNA with a Master of Science in nursing, testified regarding her twenty-three years of experience as CRNA, practicing in eight different states including Louisiana. During her career as a CRNA, she established three pain clinics and three rural hospitals, in Nebraska and Iowa. Her pain clinics provided anesthetic blocks for chronic pain patients. Ms. Wren stated that in her experience as a CRNA., the injection of steroids and analgesics for pain management purposes, including peripheral nerve blocks, epidural injections, and spinal facet joint injections, have always been a part of the practice of CRNAs in the states she practiced in, including Louisiana. However, Ms. Wren later admitted that she never practiced interventional pain management in Louisiana. In her opinion, it is within the scope of practice of a properly trained nurse anesthetist to perform interventional pain management procedures outside of the hospital setting. When asked whether she was aware of any certification beyond the CRNA licensing process or any type of regulatory process in place that would tell the public whether a particular CRNA has met a threshold standard of competency,
 
 *867
 
 Ms. Wren stated that she believed that was a function of the LSBN.
 

 Rusty Smith, a CRNA in Louisiana, testified that he performs interventional pain management in Louisiana and has done so for several years. Mr. Smith indicated that 117while he has been performing epidural injections for chronic pain relief for approximately twenty years, it is just in the last four years of his practice that he has begun offering spinal facet joint injections related to chronic pain management. He does these procedures exclusively at an ambulatory surgery center in Vidalia, Louisiana. His largest referring physician for interventional pain management procedures is Dr. Russ Fairbanks. When a patient comes to him from Dr. Fairbanks, the patient has been examined and diagnosed. Mr. Smith indicated that when submitting codes to Medicare and Medicaid, he uses the diagnosis submitted by Dr. Fairbanks. When asked if he continued with these interventional pain management procedures even after learning of the preliminary injunction that was in place concerning the LSBN’s statement, Mr. Smith stated that to his knowledge, the injunction was only against Mr. Rantz. In fact, Mr. Smith indicated that even after the preliminary injunction had been ordered, Ms. Morvant, the Executive Director of the LSBN, told him that there was nothing that would prevent him from continuing in his practice.
 

 Dr. Fail-banks, accepted by the trial court as an expert in the field of orthopedics, testified regarding his relationship with Mr. Smith. According to Dr. Fairbanks, over the last five years he has referred approximately three or four patients a week to Mr. Smith for interven-tional pain management procedures.
 
 [10]
 
 Dr. Fairbanks testified that after he sees the patient and makes a diagnosis, he refers the patient to Mr. Smith who then works under his direction. However, Dr. Fairbanks admitted that he is not in the operating suite when Mr. Smith performs these procedures. In fact, Dr. Fairbanks indicated that there may even be times when he is not in the facility when the procedures are being performed. Dr. Fairbanks stated that he has never had any complaints from his patients regarding the treatment they have received from Mr. Smith. Although Dr. Fairbanks denied having any direct financial ties with Mr. Smith, he | isdid acknowledge that he owns a percentage of the surgery center in Vida-lia where Mr. Smith performs the procedures. Dr. Fairbanks also noted that there is an interventional pain medicine physician in Natchez, Mississippi, which is only five miles from his surgery center in Vidalia.
 

 We have thoroughly reviewed the record before us and find no abuse of discretion by the trial court in its declaratory judgment in favor of Spine Diagnostics finding that the statement issued by the LSBN expanded the scope of practice for CRNAs into an area where they have not traditionally practiced and finding that the practice of interventional pain management is not within the scope of practice of a CRNA, but rather is solely the practice of medicine. Moreover, with the foregoing legal precepts in mind, and having re
 
 *868
 
 viewed the evidence considered by the trial court below, we are satisfied that Spine Diagnostics met its burden of proof on the permanent injunction and the mandatory injunction. The trial courts judgment regarding same is reasonable, supported by the record, and not manifestly erroneous.
 

 AWARD OF REASONABLE LITIGATION EXPENSES AND OTHER COSTS TO SPINE DIAGNOSTICS
 

 The LSBN argues on appeal that the trial court erred in awarding Spine Diagnostics $7,500.00 in reasonable litigation expenses pursuant to La. R.S. 49:965.1 plus an award for other fees/costs associated with expert witnesses and depositions. Spine Diagnostics argues that pursuant to La.Code Civ. P. art.1920,
 
 [11]
 
 the trial judge has great discretion in awarding costs and its judgment should not be disturbed absent an abuse of discretion.
 
 See MCI Telecommunications Corp. v. Kennedy,
 
 2004-0458, p. 11 (La.App. 1 Cir. 3/24/05), 899 So.2d 674, 681. Based on applicable law and jurisprudence, we reverse that portion of the judgment that awarded Spine Diagnostics any fees/costs in excess of the $7,500.00 provided for in La. R.S. 49:965.1.
 

 hsSpine Diagnostics’ request for litigation expenses and the trial court’s award were based on La. R.S. 49:965.1(A). It provides, in pertinent part, as follows:
 

 When a small business files a petition seeking: ... (2) judicial review of the validity or applicability of an agency rule, ... the petition may include a claim against the agency for the recovery of reasonable litigation expenses. If the small business prevails and the court determines that the agency acted without substantial justification, the court may award such expenses, in addition to granting any other appropriate relief.
 

 “Reasonable litigation expenses” are defined as “any expenses, not exceeding seven thousand five hundred dollars in connection with any one claim, reasonably incurred in opposing or contesting the agency action, including costs and expenses incurred in both the administrative proceeding and the judicial proceeding, fees and expenses of expert or other witnesses, and attorney fees.” La. R.S. 49:965.1(D)(1) (Emphasis added.);
 
 State ex rel. Louisiana Riverboat Gaming Com’n v. Louisiana State Police Riverboat Gaming Enforcement Div.,
 
 99-2038, p. 4 (LaApp. 1 Cir. 9/22/00), 768 So.2d 284, 286,
 
 writ denied,
 
 2000-2926 (La.1/5/01), 778 So.2d 598. To qualify for this relief, a “small business” must meet the criteria defined by the Small Business Administration in Section 13 of the Code of Federal Regulations, Part 121. La. R.S. 49:965.1(D)(2). A physician’s office with annual receipts of less than $9 million is considered a “small business” under the applicable regulation. 13 C.F.R. § 121.201.
 
 [12]
 
 At the hearing on the preliminary injunction, Dr. John Burdine, owner of Spine Diagnostics, testified that Spine Diagnostics’ annual receipts total less than $9 million per year. A review of the record before us reveals that this testimony was not contradicted. Thus,
 
 *869
 
 Spine Diagnostics meets the eligibility requirements set forth in the statute.
 

 Because La. R.S. 49:965.1 provides for an award for reasonable litigation expenses, it is penal in nature. It is a well-settled rule of statutory construction that penal statutes must be strictly construed and their provisions shall be given a genuine construction according to the fair import of their words, taken in their usual sense, inj^connection with the context and with reference to the purpose of the provision.
 
 Doc’s Clinic, APMC v. State ex rel. Dept. of Health and Hospitals,
 
 2007-0480, p. 32 (La.App. 1 dr. 11/2/07), 984 So.2d 711, 732,
 
 writ denied,
 
 2007-2302 (La.2/15/08), 974 So.2d 665. Pursuant to the clear language of this statute, any award for reasonable litigation expenses is limited to $7,500.00 and is inclusive of any and all costs, fees, and expenses associated with opposing or contesting the agency action. Thus, there can be no award over and above the $7,500.00 for other expert fees and deposition costs such as those awarded by the trial court in this matter. Accordingly, we affirm the $7,500.00 award for litigation expenses and reverse that portion of the judgment awarding “all costs associated with these proceedings;” “all expert costs and fees;” and “costs of all deposition transcripts.”
 

 CONCLUSION
 

 For the above and foregoing reasons, we reverse that portion of the trial court’s judgment awarding “all costs associated with these proceedings;” “all expert costs and fees;” and “costs of all deposition transcripts.” In all other respects, we affirm. All costs associated with this appeal are assessed equally against the Louisiana State Board of Nursing and the Louisiana Association of Nurse Anesthetists.
 

 AFFIRMED IN PART; REVERSED IN PART.
 

 [1]
 

 . The Louisiana Society of Anesthesiologists has intervened in the litigation praying for the same relief sought by Spine Diagnostics.
 

 [2]
 

 . We note it was not necessary that Spine Diagnostics exhaust all administrative remedies prior to seeking injunctive relief in connection with its action for declaratory judgment.
 
 See
 
 La. R.S. 49:963(E).
 

 [3]
 

 . In the opinion, the LSBME noted, in pertinent part, as follows:
 

 ... the injection of local anesthetics, steroids and analgesics, peripheral nerve blocks, epidural injections and spinal facet joint injections, when used for interventional pain management of patients suffering from chronic pain, constitute the practice of medicine, are not delegable by a physician to a non-physician by physician prescription, direction or supervision, and may only be performed in this state by a physician licensed to practice medicine in Louisiana.
 

 [4]
 

 . Spine Diagnostics subsequently moved to voluntarily dismiss Mr. Smith from this action, without prejudice. Judgment granting said dismissal was signed by the trial court on October 25, 2007.
 

 [5]
 

 . According to the record, Senate Bill 322 was proposed as an attempt to amend La. R.S. 37:930(A)(3) relative to the practice of nursing to provide that it is within the scope of practice of a CRNA to perform certain pain management procedures, including peripheral nerve blocks, epidural injections, and spinal facet joint injections, when the CRNA can document education, training, and experience in performing such procedures.
 

 [6]
 

 .On January 17, 2008, the trial court signed an amended judgment, which was identical in substance to the judgment rendered on January 10, 2008. According to the record, the amended judgment was necessary only to correct a clerical error because the original judgment indicated it had been signed on January 10, 2007, when in fact the judgment had been rendered on January 10, 2008.
 

 [7]
 

 . Both the LSBN and LANA originally sought to suspensively appeal the trial courts judgment. However, the trial court denied the requests for suspensive appeals, and instead granted both parties devolutive appeals.
 
 Am-ici Curiae
 
 briefs on behalf of the American Association of Nurse Anesthetists, the Louisiana Association of Nurse Practitioners, the American Nurses Association, the Louisiana Alliance of Nursing Organizations, the Louisiana Hospital Association, and the National Council of State Boards of Nursing, Inc. have also been filed for this court's review.
 

 [8]
 

 . Louisiana Revised Statutes 49:962 provides as follows:
 

 Each agency shall provide by rule for the filing and prompt disposition of petitions for declaratory orders and rulings as to the applicability of any statutoiy provision or of any rule or order of the agency. Declaratory orders and rulings shall have the same status as agency decisions or orders in adjudicated cases.
 

 [9]
 

 . Louisiana Revised Statutes 37:930(A) provides as follows:
 

 A. No registered professional nurse shall administer any form of anesthetic to any person under their care unless the following conditions are met:
 

 (1) The registered nurse has successfully completed the prescribed educational program in a school of anesthesia which is accredited by a nationally recognized accrediting agency approved by the United States Department of Health, Education, and Welfare.
 

 (2) Is a registered nurse anesthetist certified by a nationally recognized certifying agency for nurse anesthetists following completion of the educational program referred to in Paragraph (1) of this Subsection and participates in a continuing education program of a nationally approved accreditation agency as from time to time required which program shall be recognized as the Continuing Education Program for Certified Registered Nurse Anesthetists; and
 

 (3)Administers anesthetics and ancillaty services under the direction and supervision of a physician or dentist who is licensed to practice under the laws of the state of Louisiana. [Emphasis added.]
 

 [10]
 

 . We note that Mr. Smith did not testify during trial as to the number of interventional pain management procedures he performed. However, after the trial on the merits, there was a contempt hearing concerning a subpoena duces tecum that Mr. Smith had failed to respond to prior to trial. The motion for contempt against Mr. Smith was ultimately dismissed, and the parties entered into a stipulation that from 2004 to 2007, Mr. Smith performed a total of twelve interventional pain management procedures at the ambulatory surgical center in Vidalia.
 

 [11]
 

 . Article 1920 provides as follows:
 

 Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
 

 Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
 

 [12]
 

 . Effective August 26, 2008, 13 C.F.R.
 

 121.201 was amended to provide that a physician's office must now have annual receipts of less than $10 million to be considered a "small business.”