# IN THE COURT OF APPEALS OF IOWA

No. 16-1902
Filed January 10, 2018


**IOWA ASSOCIATION OF ORIENTAL MEDICINE AND ACUPUNCTURE,**
        Petitioner-Appellant,

**vs.**

**IOWA BOARD OF PHYSICAL AND OCCUPATIONAL THERAPY,**
        Respondent-Appellee,

**and**

**IOWA PHYSICAL THERAPY ASSOCIATION,**
        Intervenor-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, David M. Porter,

Judge.


        The Iowa Association of Oriental Medicine and Acupuncture appeals a

district court ruling on its petition for judicial review following a declaratory order

by the Iowa Board of Physical and Occupational Therapy.  **AFFIRMED.**


        Frank Steinbach III of McEnroe, Gotsdiner, Brewer, Steinbach & Rothman,

P.C., West Des Moines, and Brent Foster, Hood River, Oregon, for appellant.

        Thomas J. Miller, Attorney General, and Laura C. Steffensmeier, Assistant

Attorney General, for appellee Iowa Board of Physical and Occupational Therapy

        Douglas L. Struyk of Carney & Appleby, P.L.C., Des Moines, and John J.

Bennett, Alexandria, Virginia, for appellee Iowa Physical Therapy Association.

        Heard by Danilson, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

The Iowa Association of Oriental Medicine and Acupuncture (Association) appeals a district court ruling on its petition for judicial review following an order by the Iowa Board of Physical and Occupational Therapy (Board) declaring the practice of "dry needling"[1] falls within the definition of "physical therapy" contained in Iowa Code section 148A.1(1)(b) (2015). The Association contends the Board's determination is an irrational, illogical, or wholly unjustifiable interpretation of the statute.[2] *See* Iowa Code § 17A.19(10)(*l*).[3]

**I.     Background Facts and Proceedings**

In August 2015, the Association petitioned the Board for a declaratory order defining "dry needling" as a form of acupuncture and a practice not within the legal scope of the practice of physical or occupational therapy. The gist of the Association's position on the matter was that physical therapists and other professionals were engaging in dry needling without formal acupuncture training, such was detrimental to public safety, and the practice of dry needling should be reserved for advanced acupuncture practitioners. In September, the American

---

[1] The district court implicitly adopted the Board and Federation of State Boards of Physical Therapy's definition of dry needling:

> Dry needling is a skilled technique performed by a physical therapist using filiform needles to penetrate the skin and/or underlying tissue to affect change in body structures and functions for the evaluation and management of neuromusculoskeletal conditions, pain, movement impairments, and disability.

[2] The Association also argues the Board's interpretation of section 148A.1(1)(b) is beyond its statutory authority. *See* Iowa Code § 17A.19(10)(b). The Association's argument appears to be, however, that the Board's determination is only beyond its statutory authority because it is based upon an irrational, illogical, or wholly unjustifiable application of the law. We therefore only consider, as did the district court, the viability of the Board's determination under Iowa Code section 17A.19(10)(*l*).

[3] In this opinion, references to chapter 17A are to the 2016 version of the Iowa Code. All other statutory references are to the 2015 version.

Physical Therapy Association and the Iowa Physical Therapy Association (IPTA) filed a joint petition to intervene and generally argued the practice of dry needling falls within the statutory definition of physical therapy. The Board granted the petition for intervention and established a forty-five-day public comment period.

In January 2016, following the submission of hundreds of comments and oral arguments by the parties, the Board issued its ruling declaring "[d]ry needling falls within the definition of physical therapy because it is a rehabilitative procedure used to prevent, correct, minimize, or alleviate a physical impairment." *See id.* § 148A.1(1)(b). In its ruling, the Board repeated its informal position that there is "nothing in the laws and rules governing the practice of physical therapy to prohibit a physical therapist from performing dry needling, provided the physical therapist ha[s] adequate training to competently perform the technique." The Board noted several differences between dry needling and acupuncture but declined to rule whether or not dry needling is acupuncture, citing a lack of jurisdiction. *See generally id.* § 148E.1(3) (placing oversight of the practice of acupuncture with the board of medicine).

The Association filed a petition for judicial review of the Board's declaratory ruling, *see id.* § 17A.19(1)–(2), arguing the Board "exceeded its authority in its determination dry needling is within the scope of physical therapy" and erroneously interpreted section 148A.1(1)(b). The district court granted IPTA's subsequent motion to intervene. The district court heard oral arguments in July 2016 and, in October, issued an order affirming the Board's ruling, concluding the Association failed to meet its "burden of demonstrating the

Board's decision was irrational, illogical, or wholly unjustifiable." This appeal followed.

## II.    Standard of Review

"Judicial review of agency decisions is governed by Iowa Code section 17A.19." *Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 530 (Iowa 2017) (quoting *Kay-Decker v. Iowa State Bd. of Tax Review*, 857 N.W.2d 216, 222 (Iowa 2014)). The district court acts in an appellate capacity in judicial-review proceedings. *Iowa Med. Soc'y v. Iowa Bd. of Nursing*, 831 N.W.2d 826, 838 (Iowa 2013) (quoting *City of Sioux City v. GME, Ltd.*, 584 N.W.2d 322, 324 (Iowa 1998)). On appeal, this court "appl[ies] the standards of section 17A.19(10) to determine if we reach the same results as the district court." *Brakke*, 897 N.W.2d at 530 (quoting *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 10 (Iowa 2010)). Relief in a judicial-review proceeding is appropriate only "if the agency action prejudiced the substantial rights of the petitioner and if the agency action falls within one of the criteria listed in section 17A.19(10)(a) through (n)." *Id.*

"The boards for the various professions shall adopt all necessary and proper rules to administer and interpret this chapter [147] and chapters 148 through 158, except chapter 148D." Iowa Code § 147.76. Thus, there is no question the legislature has granted the Board interpretive authority as to chapter 148A. *Cf. Iowa Med. Soc'y*, 831 N.W.2d at 827, 838; *Houck v. Iowa Bd. of Pharmacy Exam'rs*, 752 N.W.2d 14, 18 (Iowa 2008); *Al-Jurf v. Iowa Bd. of Med.*, No. 12-0293, 2013 WL 3830159, at *4 (Iowa Ct. App. July 24, 2013). Where the legislature has granted an agency such authority, "[w]e defer to the agency's interpretation of law" and "will overturn an agency's interpretation of law . . . only

if the agency's interpretation is 'irrational, illogical, or wholly unjustifiable.'" *Brakke*, 897 N.W.2d at 530 (citations omitted); *accord* Iowa Code § 17A.19(10)(*l*). This is akin to "a deferential abuse-of-discretion standard of review." *Thoms v. Iowa Pub. Emp. Ret. Sys.*, 715 N.W.2d 7, 11 (Iowa 2006).

## III.  Analysis

"An agency shall have only that authority or discretion delegated or conferred upon the agency by law and shall not expand or enlarge its authority or discretion beyond the powers delegated to or conferred upon the agency." Iowa Code § 17A.23(3). The Association challenges the Board's interpretation of a term used within the legislature's definition of "physical therapy" in Iowa Code section 148A.1(1)(b). "Physical therapy" is statutorily defined as follows:

> "physical therapy" is that branch of science that deals with the evaluation and treatment of human capabilities and impairments. Physical therapy uses the effective properties of physical agents including, but not limited to, mechanical devices, heat, cold, air, light, water, electricity, and sound, and therapeutic exercises, and *rehabilitative procedures to prevent, correct, minimize, or alleviate a physical impairment.*

*Id.* § 148A.1(1)(b) (emphasis added). The Board determined, "Dry needling falls within the definition of physical therapy because it is a rehabilitative procedure used to prevent, correct, minimize, or alleviate a physical impairment." The Association specifically contends the Board's interpretation of the term "rehabilitative procedures" is irrational, illogical, or wholly unjustifiable.

Although the legislature defined "physical therapy," it did not define the terms used within its definition, namely the term "rehabilitative procedures." *See id.* The legislature has not defined the term "rehabilitative procedures" elsewhere in the code, and, based on the language of the statute, the term appears to be a

substantive term within the special expertise of the Board. Under these circumstances, we conclude the legislature has expressly authorized the Board to interpret the term "rehabilitative procedures." *See Renda*, 784 N.W.2d at 14 ("[W]hen the statutory provision being interpreted is a substantive term within the special expertise of the agency, we have concluded that the agency has been vested with the authority to interpret the provisions. . . . When the provisions to be interpreted are found in a statute other than the statute the agency has been tasked with enforcing, we have generally concluded interpretive power was not vested with the agency."); *see also* Iowa Code § 147.76. The Iowa Supreme Court has directed that our review in such circumstances "is controlled in large part by the deference we afford to decisions of administrative agencies." *Iowa Med. Soc'y*, 831 N.W.2d at 839.

Where the legislature "clearly delegates *discretionary* authority to an agency to interpret or elaborate a statutory term based on the agency's own special expertness, the court may not simply substitute its view as to the meaning or elaboration of the term for that of the agency" unless the agency interpretation is irrational, illogical, or wholly unjustifiable. *Renda*, 784 N.W.2d at 11 (quoting Arthur E. Bonfield, *Amendments to Iowa Administrative Procedure Act, Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 62 (1998)); *see* Iowa Code § 17A.19(10)(*l*). Where, as here, "the statutory provision being interpreted is a substantive term within the special expertise of the agency, . . . the agency has . . . the authority to interpret the provisions." *Renda*, 784 N.W.2d at 14.

The Association's general argument is that the Board's interpretation expands the scope of physical therapy beyond what the legislature intended and is therefore an irrational, illogical, or wholly unjustifiable interpretation of the statute. In determining the legislature's intent, we consider "the words chosen by the legislature, not what it should or might have said." *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004); *accord State v. Pettijohn*, 899 N.W.2d 1, 15 (Iowa 2017). "When the legislature fails to define a statutory term, we examine the context in which the term appears and accord the term its ordinary and common meaning." *Pettijohn*, 899 N.W.2d at 16. We consider the statute as a whole, not just isolated words or phrases. *Id.*

The statute, by its punctuation and repetitive use of the word "and," clearly groups physical therapy into three separate categories of treatment that "prevent, correct, minimize, or alleviate a physical impairment": (1) the use of "effective properties of physical agents including, but not limited to, mechanical devices, heat, cold, air, light, water, electricity, and sound," (2) "therapeutic exercises," and (3) "rehabilitative procedures."[4] *See* Iowa Code § 148A.1(1)(b). The Association argues the non-invasive nature of the "physical agents" noted in the first grouping restricts rehabilitative procedures in the third grouping to non-

---

[4] The statute provides:

> Physical therapy uses the effective properties of physical agents including, but not limited to, mechanical devices, heat, cold, air, light, water, electricity, and sound, *and* therapeutic exercises, *and* rehabilitative procedures to prevent, correct, minimize, or alleviate a physical impairment.

Iowa Code § 148A.1(1)(b) (emphasis added). Focusing on the language of the relevant grouping, the statute effectively defines that category of physical therapy as the use of "rehabilitative procedures to prevent, correct, minimize, or alleviate a physical impairment." *Cf. Sullivan v. Abraham*, 488 S.W.3d 294, 298–98 (Tex. 2016) (concluding legislative use of oxford or serial comma before the term "and" separates the terms in the series and therefore limits term modifiers to their particular grouping in a statute).

invasive treatment, which would not include dry needling. Based on the punctuation and wording of the statute, quoted in its entirety above, we conclude the only matters limiting the invasiveness of potential rehabilitative procedures under the statute are the term's common and ordinary meaning and Iowa Code section 148A.5, which expressly prohibits physical therapists from practicing "operative or osteopathic surgery or chiropractic manipulation" and from administering or prescribing any drug.

With these contextual limitations in mind, we accord the term "rehabilitative procedures" its ordinary and common meaning in order to determine legislative intent. *See Pettijohn*, 899 N.W.2d at 16 ("When the legislature fails to define a statutory term, we examine the context in which the term appears and accord the term its ordinary and common meaning."). "Rehabilitative" in the treatment context ordinarily concerns efforts intended "to restore [a person] to a condition of health or normal activity." Webster's Third New International Dictionary 1914 (unabridged ed. 2002). A "procedure" is "a particular way of doing or of going about the accomplishment of something." *Id.* at 1807.

As did the Board, we recognize that the ordinary and common meaning of the term "rehabilitative procedures" is broad. The Association complains the Board's broad use of the term effectively expands the definition of physical therapy to include almost any type of procedure. We limit our consideration of procedures to the facts of this case, not hypotheticals. And, the record before us reveals physical therapists have been engaged in the practice of dry needling for several years in Iowa, generally without incident. The Association finally argues

dry needling is, in fact, acupuncture and, because acupuncture is regulated under Iowa Code chapter 148E, the legislature could not have intended to allow physical therapists to engage in dry needling. The Board, however, correctly determined it lacked jurisdiction to determine whether dry needling amounts to acupuncture, as that question—and whether to address it—is reserved for the board of medicine. *See* Iowa Code §§ 147.76, 148E.1(3). The issue of whether dry needling amounts to acupuncture is therefore not ripe for our review. *See State v. Tripp*, 776 N.W.2d 855, 859 (Iowa 2010) (quoting *State v. Iowa Dist. Ct.*, 616 N.W.2d 757, 578 (Iowa 2000)). The Association's complaint that the Board allows physical therapists to engage in dry needling absent specific training is premature, inasmuch as the Board has delayed the promulgation of administrative rules on the matter until this litigation is resolved. In any event, the Board has taken the position that physical therapists cannot engage in dry needling absent adequate training to competently perform the technique.

The Board consists of seven members: three physical therapists, two occupational therapists, and two members of the public. Iowa Code § 147.14(1)(j). The Board is generally allowed to apply its expertise in the area of physical therapy to determine what matters are within the scope of the practice. In granting deference to the Board's expertise in the area of physical therapy, we conclude its determination that the practice of dry needling falls within the definition of physical therapy was not irrational, illogical, or wholly unjustifiable. As such, we affirm the district court's denial and dismissal of the Association's petition for judicial review of the Board's declaratory order.

**AFFIRMED.**